UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GB INTERNATIONAL, *et al*.,

           Plaintiffs,

      v.

KRISTINE R. CRANDALL, *et al*.,

           Defendants.

Case No. 2:18-cv-227-RAJ

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. ##18, 22.  For the reasons below, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiffs' motion.

## II.   BACKGROUND

In 2007, Plaintiff Dong Choel Park established GB International, Inc. (GBI), a Washington company that procures products and services relating to offshore drilling, shipbuilding, military defense, and building infrastructure for companies based in South Korea.  Dkt. # 13 at 78; Dkt. # 14 at 85.[1]  Several years later, in December 2011, Park established GBI Korea, an affiliate company based in Busan, South Korea.  Dkt. # 13 at

---

[1] There are three certified administrative records (CAR) in this action, one each for Plaintiffs Dong C. Park, Hyojin Kim, and minor Y-P-.  Dkt. # 13 (CAR 1, Part 1) (Park); Dkt. # 14 (CAR 1, Part 2); Dkt. # 15 (CAR 2) (Kim); Dkt. # 16 (CAR 3) (Y-P-).

ORDER – 1

78.  He is the President and CEO of both companies.  *Id*. at 82.  According to Park, GBI grew substantially between 2013 and 2015 primarily because he was able to cultivate business relationships with several South Korean companies and procure specialized equipment for GBI's customers.  Dkt. # 18 at 3.  During these two years, GBI grew from a company of four employees to seven employees.  Dkt. # 14 at 129-31.

From April 2013 to April 2014, Park performed his job duties primarily from abroad.  Dkt. # 13 at 466-67.  In addition to establishing relationships with South Korean companies, Park claims he attended industry events, negotiated contracts for the purchase and sale of new products, and reviewed reports from subordinate employees on various topics, including regulatory conditions and currency fluctuations.  *Id*. at 466-71.  Park also claims that he conducted meetings with subordinate employees to formulate corporate goals and policies.  *Id*.  Although Park had a manager in the United States, he desired to spend more face-to-face time with his U.S.-based suppliers and employees.  *Id*. at 83.  In April 2014, Park entered the United States on an E-1 visa along with his wife and child who came as derivative family members.  Dkt. # 18 at 6.  They are also plaintiffs in this action.

On December 23, 2015, GBI filed a Petition for Alien Worker (Form I-140) for Park's benefit, classifying him as a "multinational executive or manager" of GBI.  *Id.* at 78.  Park and each of his derivative family members concurrently filed an Application for Adjustment of Status (Form I-485) based on GBI's I-140 petition.  Dkt. # 13 at 2; Dkt. # 15 at 2; Dkt. # 16 at 2.  While the I-140 petition and the I-485 applications were pending, Park's E-1 visa expired on July 28, 2017.  Dkt. # 22-1.  On December 8, 2017, U.S. Citizenship and Immigration Services (USCIS) denied GBI's I-140 petition, finding GBI failed to establish that Park was employed in an "executive capacity" from April 2013 to April 2014.  Dkt. # 13 at 78.  On January 9, 2018, GBI and Park filed a motion to reopen and reconsider the I-140 petition, which was granted.  Dkt. # 13 at 78; Dkt. # 14 at 102.  On or about August 7, 2018, USCIS again denied GBI's I-140 petition.  *Id*.  Having again

ORDER – 2

denied the underlying I-140 petition, USCIS subsequently denied the Parks' I-485 applications. Dkt. # 13 at 2; Dkt. # 15 at 2; Dkt. # 16 at 2.

On February 2018, Plaintiffs filed this Complaint against Defendants United States of America, Kristine R. Crandall, L. Francis Cissna, and Kirstjen Nielsen alleging USCIS's denial of the I-140 petition violated the Administrative Procedures Act (APA). Dkt. # 1. After the administrative records were certified, Plaintiffs moved for summary judgment and a preliminary injunction on November 27, 2018. Dkt. ## 18, 19. On January 7, 2019, Defendants filed a response and cross-motion for summary judgment. Dkt. # 22. On January 29, 2019, the Court denied Plaintiffs' motion for a preliminary injunction. Dkt. # 24. The parties' motions for summary judgment are now before the Court.[2]

### III. LEGAL STANDARD

The Administrative Procedures Act (APA) permits judicial review of a "final agency action for which there is no other adequate remedy in court." 5. U.S.C. § 704. The Court may only set aside the underlying agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Thus, the Court does not, as it would in ruling on an ordinary summary judgment motion, determine whether there is any genuine dispute of material fact. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Instead, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action passes muster under the APA. *Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); *Occidental Eng'g*, 753 F.2d at 769-70. Accordingly, the Court reviews the evidence included in the administrative record to determine whether, as a matter of law, the evidence permitted the agency to make the decision it did. *Id.* Although the Court's review of the evidence is to be "searching and

---

[2] Under the Local Rules, surreplies are "strictly limited" to requests to strike material contained in or attached to a reply brief. "Extraneous argument or a surreply filed for any other reason will not be considered." W.D. Wash. L.R. 7(g). Given this authority, the Court will not consider Plaintiffs' surreply (Dkt. # 34) when considering the motions.

ORDER – 3

careful," it is "not empowered to substitute [its] judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

## IV.  DISCUSSION

The Immigration and Nationality Act (INA) provides for preference visas to "[c]ertain multinational executives and managers" who come to the United States to serve "in a capacity that is managerial or executive."  8 U.S.C. § 1153(b)(1)(C).  USCIS claims that its decision to deny GBI's I-140 petition based on 8 C.F.R. §204.5(j)(2) was neither arbitrary or capricious, and thus must be upheld by this Court.  Dkt. # 22.  Plaintiffs argue there are several reasons to support finding that USCIS's decision was arbitrary, capricious, and otherwise not in accordance with the law.

First, Plaintiffs contend that 8 C.F.R. §204.5(j)(2) is an *ultra vires* regulation.  Dkt. # 19 at 10.  Where, as here, a I-140 petition classifies a beneficiary as a "multinational executive or manager," USCIS requires the beneficiary to be employed in "managerial or executive" capacity in the year preceding his or her entry to the United States.  *See* 8 C.F.R. §204.5(j)(2).  Plaintiffs claim, however, that the plain language of the INA does not require a beneficiary to be employed in a "managerial or executive" capacity before entering the United States, and in fact only requires that the beneficiary be "employed for at least one year by a firm or corporation or other legal entity" related to the U.S. company.  Dkt. # 30 at 6.

Second, Plaintiffs claim that to the extent 8 C.F.R. §204.5(j)(2) is valid regulation, USCIS's denial of the I-140 petition was based on a legally incorrect interpretation of the term "executive capacity."  *Id*. at 9.  To be an individual to be employed in an "executive capacity," Plaintiffs claim that USCIS improperly requires an organization to have subordinate managerial employees who focus on the broad goals and policies of the organization.  *Id*. at 10-11 (claiming USCIS disregarded the differences between "managerial capacity" and "executive capacity" as defined in 8 C.F.R. §204.5(j)(2)).  Moreover, Plaintiffs claim that USCIS improperly rejected evidence regarding Park's

ORDER – 4

weekly activities and job activities. *Id.* at 9-11. According to Plaintiffs' USCIS's failure to accept this evidence renders its decision arbitrary and capricious.

Third, Plaintiffs contend that USCIS failed to comply with 8 U.S.C. §1101(a)(44)(C), which states that if staffing levels are used in determining whether an individual is acting in an executive capacity, then USCIS "shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function." Plaintiffs argue that USCIS failed entirely to comply with 8 U.S.C. §1101(a)(44)(C) in evaluating GBI's I-140 petition. Dkt. # 18 at 15; Dkt. # 30 at 11. Specifically, Plaintiffs claim that USCIS failed to consider that GBI Korea did not have an organizational need for subordinate employees or secretarial services in early 2013. Dkt. # 18 at 16.

The Court addresses each argument below.

## A. Whether 8 C.F.R. §204.5(j)(2) is *Ultra Vires* to the INA

The Court reviews whether 8 C.F.R. §204.5(j)(2) conflicts with the INA under the two-part test set out in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under the first part of the *Chevron* analysis, the Court must ask whether Congress has spoken to question at issue or "has explicitly left a gap for the agency to fill." 467 U.S. at 843–44. If Congress has spoken to the issue unambiguously, then the Court must accept that statement as controlling. *Id.*; *Ruiz–Diaz v. United States*, 618 F.3d 1055, 1060 (9th Cir. 2010). However, if the statute at issue is either silent or ambiguous, the Court must proceed to part two and consider whether the agency's interpretation is a reasonable and permissible construction of the statute. *Id.* at 1060. Where the agency's interpretation is reasonable, the Court must defer to the agency. *Id.*

Section 203(b)(1)(C) of the INA, the provision concerning immigrant visas for multinational executives, reads as follows:

> An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this

subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

8 U.S.C. § 1153(b)(1)(C).

The Court cannot conclude, as Plaintiffs do, that the INA's statutory language conflicts with 8 C.F.R. §204.5(j)(2). At best, Plaintiffs could argue that the statute is silent on the executive capacity requirement in the qualifying year, which then requires the Court to look the agency's interpretation of the statute. *Chevron*, 467 U.S. at 843–44. As USCIS notes, its precursor, INS, considered Congress's statement that "the need of multinational business to transfer key personnel around the world as nonimmigrants is parallel in this category to allow a basis upon which these individuals may immigrate." 56 Fed. Reg. 30703-01, 1991 WL 295759 (July 5, 1991) (explaining its interpretation of this INA provision as applying to only those executive and managers who have previously worked for the business entity, or an affiliate or subsidiary of that entity, and are coming to the United States to work for the same entity, or its affiliate or subsidiary). Accordingly, INS implemented a regulation that "follows criteria long in place for the adjudication of petitions for nonimmigrant intra-company transferees, and immigrant petitions under [Department of Labor's] current Schedule A/Group IV, for such managers and executives." *Id.* The Department of Labor's Schedule A/Group IV at the time required the transferee's qualifying year be in a managerial or executive capacity. *Id.* Because the agency's interpretation of the INA is reasonable, the Court finds that 8 C.F.R. §204.5(j)(2) is not *ultra vires*. *Chevron*, 467 U.S. at 842–43.

## B. Whether USCIS's Decision Was Otherwise Arbitrary and Capricious

Plaintiffs' two remaining contentions concern USCIS's specific handling of GBI's petition. First, Plaintiffs claim that USCIS not only relied on an improper understanding of "executive capacity" in denying GBI's I-140 petition, but also wrongly discounted

evidence showing Park to be employed in such a capacity. The Court disagrees. USCIS explicitly relied on a definition of "executive capacity" that recognizes the executive's ability to direct "major components" or "functions" of the organization. Dkt. # 13 at 87 (citing to INA § 101(a)(44)(B)). USCIS also noted that the classification "requires that the duties of a position be 'primarily' executive in nature," as required by the INA, and further explains that, "[w]hether the broad duties attributed to the beneficiary qualify as executive in nature depends in large part on whether the petitioner established that he would have sufficient subordinate staff to supervise and perform the day-to-day company activities he is claimed to oversee or direct." Dkt. # 13 at 87. While Plaintiffs contend that the INA does not require a petitioning organization to have subordinate managerial employees for a beneficiary to qualify as an executive, there is nothing in the plain language that keeps USCIS from considering whether an organization has reached the level of sophistication where an individual could devote primary attention to executive duties as opposed to operational ones. *See Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008) (affirming visa denial where agency concluded that the president's direct involvement in the corporation's daily operations was necessary for its success and that such fact precluded him from qualifying as a managerial employee); *Family Inc. v. USCIS*, 469 F.3d 1313, 1316 (9th Cir. 2006). In GBI's case, USCIS found the lack of other employees serving as managers and team members likely meant that Park was not relieved from significant involvement in the operational tasks required to operate the business. *See Family Inc.*, 469 F.3d at 1313 (record did not compel the conclusion that beneficiary was primarily engaged in managerial duties, as opposed to ordinary operational activities alongside the corporation's five other employees).

Plaintiffs also claim that USCIS doubted evidence concerning Park's weekly activities and job activities "without justification." Dkt. # 30 at 14. But the record shows that USCIS noted several inconsistencies regarding Parks' duties and GBI's operations in coming to its conclusion. Dkt. # 13 at 87-88. For instance, USCIS found work descriptions

ORDER – 7

referencing other employees at GBI Korea lacked credibility since other evidence showed that Park was the sole employee there from April 2013 to March 2014. *Id*. (concluding that the descriptions of Park's duties referencing teams, managers, key employees, and departments did not match the state of the business in 2013). Similarly, USCIS questioned descriptions referencing meetings with GBI's "Board of Directors," as other evidence showed neither GBI or GBI Korea had such a board. *Id*. USCIS also found inconsistencies in the work descriptions of those individuals who claimed to be assisting Park with administrative needs. *Id*. at 85 (explaining that nothing in employee's job description as a "Purchasing Agent" indicated she performed administrative duties for Park or other staff); *id*. at 86 (noting that letter submitted in support of the petition lacked details sufficient to determine whether Park was relieved of non-executive functions). In denying GBI's petition, USCIS stated that these discrepancies had not resolved by independent, objective evidence, and that the declarations and opinions filed by Park and others were either conclusory, self-interested, or irrelevant. While "[t]estimony should not be disregarded merely because it is uncorroborated and in the individual's own interest," *Murphy v. INS*, 54 F.3d 605, 612 (9th Cir. 1995), the record suggests that USCIS simply accorded these declarations and opinions less weight rather than dismissing them altogether. *See, e.g.*, Dkt. # 13 at 86-88.

Lastly, Plaintiffs argue that USCIS failed to consider the reasonable needs of the organization. This too falls short. Ninth Circuit has explained that USCIS cannot use an employer's small size, standing alone, to justify that an employee is not operating in a managerial or executive capacity. *See Family Inc*, 469 F.2d at 1316. The record show, however, that USCIS did in fact consider the reasonable needs of the organization in rendering its decision. Dkt. # 13 at 84. Specifically, USCIS took note of the fact that Park was the only employee in Korea until March 2014, that he was likely facilitating transactions, and that the corporation generally lacked individuals who would perform non-managerial or non-executive tasks. *Id*. at 84-87. USCIS can properly consider an

organization's small size as one factor in assessing whether its operations are substantial enough to support a manager or executive. *See Family Inc*., 469 F.3d at 1316. Therefore, the Court considers this contention to be without merit.

Ultimately, USCIS's finding that Park was not engaged primarily in executive duties is supported by substantial evidence. Therefore, its denial of the petition was neither arbitrary or capricious, nor an abuse of discretion. The Court grants summary judgment in USCIS's favor.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion (Dkt. # 22) and **DENIES** Plaintiffs' motion (Dkt. # 18).

DATED this 22nd day of August, 2019.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 9